Kevin E. Dinius
Sarah Hallock-Jayne
DINIUS LAW
5680 E. Franklin Rd., Suite 130
Nampa, Idaho 83687
Telephone:    (208) 475-0100
Facsimile:    (208) 475-0101
ISB Nos.    5974, 5745
*kdinius@diniuslaw.com*
*shallockjayne@diniuslaw.com*
iCourt: *efile@diniuslaw.com*
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| NATHAN DOUTHIT, <br><br> Plaintiff, <br><br> -vs- <br><br> CITY OF CALDWELL; CALDWELL POLICE DEPARTMENT; REX INGRAM; SHAWN SOPOAGA; ROBERT ROSIN; JOHN TUCKER; and, TAYLER YETT, <br><br> Defendants. | CASE NO. _____ <br><br> **COMPLAINT** <br> **and DEMAND FOR JURY TRIAL** |

COMES NOW, the Plaintiff, NATHAN DOUTHIT, by and through his undersigned

attorneys of record, the law firm of Dinius Law, and for his claims of relief and causes of action

against the above-named Defendants COMPLAINS AND ALLEGES as follows:

## PARTIES, JURISDICTION AND VENUE

1.    At all material times herein mentioned, Plaintiff NATHAN DOUTHIT (hereinafter,

COMPLAINT and DEMAND FOR JURY TRIAL - 1

"Plaintiff") has been and is residing in Caldwell, State of Idaho.

2.      Defendant CITY OF CALDWELL (hereinafter, "the City") is a political subdivision of the State of Idaho and is also an employer as defined by Idaho Code § 6-2103.

3.      Defendant CALDWELL POLICE DEPARTMENT (hereinafter, "the CPD") is a political subdivision of the State of Idaho and is also an employer as defined by Idaho Code § 6-2103.

4.      Defendant REX INGRAM ("Ingram") was, at all times relevant, a resident of Ada County. At times most pertinent to this action, Ingram was the Chief of Police for the City of Caldwell Police Department and the chief policy and decision maker charged with oversight, supervision and training of the police officers of the Caldwell Police Department. Defendant Ingram is sued individually and in his official capacity.

5.      Defendant SHAWN SOPOAGA ("Sopoaga") was, at all times relevant, a resident of Ada County. At times most pertinent to this action, Sopoaga was the Deputy Chief of Police for the City of Caldwell Police Department and is charged with oversight, supervision and training of the police officers of the Caldwell Police Department. Defendant Sopoaga is sued individually and in his official capacity.

6.      Defendant ROBERT ROSIN ("Rosin") was, at all times relevant, a resident of Ada County. At times most pertinent to this action, Rosin was a Captain with the City of Caldwell Police Department, Operations Bureau, and is charged with oversight, supervision and training of the police officers of the Caldwell Police Department. Defendant Rosin is sued individually and in his official capacity.

7.      Defendant JOHN TUCKER ("Tucker") was, at all times relevant, a resident of Canyon County. At times most pertinent to this action, Tucker was a Lieutenant with the City of Caldwell Police Department, Professional Standards Bureau, and is charged with the investigation of alleged misconduct and service complaints by citizens and/or Caldwell Police Department employees,

COMPLAINT and DEMAND FOR JURY TRIAL - 2

among other things. Defendant Tucker is sued individually and in his official capacity.

8.    Defendant TAYLER YETT ("Yett") was, at all times relevant, a resident of Ada County. At times most pertinent to this action, Yett was the Attorney for the City of Caldwell and legal adviser to the Caldwell Police Department. Defendant Yett is sued individually and in her official capacity.

9.    The conduct complained of occurred in Caldwell, Idaho.

10.    This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to state law claims.

11.    Venue is proper in this district pursuant to 28 U.S.C § 1391 (b) and (c).

## NOTICE OF CLAIM

12.    On or about August 19, 2024, Plaintiff timely filed a Notice of Tort Claim against Defendants pursuant to the Idaho Tort Claims Act, Idaho Code §§ 6-901 *et seq*.

## GENERAL ALLEGATIONS

13.    In May 20, 2019, Plaintiff began working as a patrol officer with the Caldwell Police Department ("Department").

14.    During his tenure with the Department Plaintiff worked through the tumultuous times surrounding the Joey Hoadley investigation and trial.

15.    Plaintiff, like most every officer and Caldwell citizen, looked forward to a brighter future when the City hired Rex Ingram as its Chief of Police in July 2022.

16.    Unfortunately, under Ingram's leadership the Department is in turmoil with many officers questioning Ingram's management of the Department.

17.    It has become increasingly clear that any officer that questions Ingram's conduct or expenditures of public funds almost immediately faces internal investigation and, ultimately, termination.

COMPLAINT and DEMAND FOR JURY TRIAL - 3

18.	On May 13, 2024, Plaintiff emailed Caldwell Mayor Jarom Wagoner ("the Mayor") asking to schedule a meeting with him because of his "concerns about the administration of the department."

19.	Plaintiff's "concerns" were focused on several aspects of Ingram's management of the Department and included significant travel expenditures for travel unrelated to training, the use of taxpayer funds for the newly created 501(c)(3) mounted unit as well as the use of taxpayer funds for personal meals and outings.

20.	Some of the more troubling expenditures Ingram made with his City credit card include numerous meals at Indian Creek Steak House (and other local restaurants), Ruth's Chris Steakhouse in Boise and purchasing a suite for a Steelheads Hockey game – all with taxpayer money.  While this brief list is by no means exhaustive, Plaintiff was concerned over what he – in good faith – perceived to be a misuse of public funds and sought an audience with the Mayor to discuss his concerns.

21.	Unfortunately, Plaintiff was not afforded the opportunity to meet with the Mayor to discuss his concerns. Instead, acting almost immediately, Ingram opened an internal investigation into Plaintiff for making "disparaging remarks,[sic] directed at Chief Rex R. Ingram and other Department Administrators . . . ."

22.	Plaintiff was placed on administrative leave on May 14, 2024 – the day after he emailed the mayor - and, in an unprecedented move, was placed on **house arrest** by Sopoaga.

23.	The "Personnel Order" Sopoaga executed stated "you will remain at home and available between the hours of 8:00 a.m. and 5:00 p.m. Monday through Friday. You are to notify the PSB Lieutenant, John Tucker, ***and obtain permission prior to leaving the residence for any reason during these hours***." (Emphasis added).

COMPLAINT and DEMAND FOR JURY TRIAL - 4

24.     It was not until days later, and after Plaintiff's counsel pointed out the unlawfulness of this "Order" that Plaintiff was relieved of his house arrest restrictions.

25.     On July 24, 2024, Plaintiff was notified that Ingram intended to terminate Plaintiff's employment with the Department.  Ingram did not involve Caldwell's Human Resources Director in the process or decision to terminate Plaintiff in violation of City rules and ordinances.

26.     A *Laudermill* Hearing was scheduled for July 29, 2024 before Sopoaga to, presumably, carry out the termination that was decided on July 24, 2024.  Interestingly, the *Laudermill* Hearing turned out to be nothing more than an opportunity for Sopoaga, Rosin, Tucker and Yett to try and convince Plaintiff he should simply resign his employment with the Department.  Plaintiff made it clear he had no intention of resigning – he lives in Caldwell and is committed to the community and planned on continuing to serve and protect his community. The Defendants in attendance lauded Plaintiff's service and performance as a patrol officer.

27.     Plaintiff was on administrative leave for more than 15 weeks because he dared question Ingram's conduct and expenditures of public funds.

28.     Plaintiff was an upstanding officer in Caldwell with no performance issues – and was only placed under investigation *__after__* he emailed the Mayor requesting a meeting to discuss his concerns over the Caldwell Police Department Administration.  Notably, Ingram and Sopoaga's use of taxpayer money curbed dramatically after Plaintiff's email to the Mayor.

29.     Ingram's retaliatory investigation and decision to terminate Plaintiff are self-serving and unlawful.

30.     On August 19, 2024, Plaintiff was unlawfully terminated.

## COUNT I
### Violation of the Idaho Public Employee Protection Act/Wrongful Discharge

31.     The allegations set forth in the preceding paragraphs of this Complaint are realleged in this

paragraph as if fully set forth in their entirety herein.

32.    Plaintiff was an employee who engaged in protected activity.

33.    Plaintiff communicated in good faith concerns about the administration of the Department, misuse of public funds and suspected violation of laws, rules or regulations as protected under Idaho Code § 6-2104(1) and as outlined above.

34.    Because of his communications, Defendants have taken adverse actions against Plaintiff affecting his employment, including the termination of his employment as outlined above.  These actions have lasting implications on Plaintiff's future employment.

35.    There is a causal connection between the protected activity and the Defendants' adverse actions.

36.    As a direct and proximate result of the Defendants' acts or omissions, Plaintiff has suffered general damages, loss of earnings, emotional damages, and punitive damages in an amount to be proven at trial, but which amount exceeds $10,000. Further, Plaintiff is entitled to costs and attorney fees, and any other relief allowed under Idaho Code § 6-2105.

### COUNT II
**Deprivation of Plaintiff's Property and Liberty Interests Without Due Process
in Violation of 42 U.S.C. § 1983**

37.    The allegations set forth in the preceding paragraphs of this Complaint are realleged in this paragraph as if fully set forth in their entirety herein.

38.    Plaintiff had a property and liberty interest in his employment and a reasonable expectation that his employment would continue.

39.    Defendants infringed upon these liberty interests by impugning the good name, reputation, honor, and integrity of Plaintiff by terminating his employment and making false allegations of unsatisfactory performance.

40.    These false allegations are part of Plaintiff's personnel file and impose a stigma on his

professional reputation.

41.    As a result of Defendants' wrongful conduct, Plaintiff's professional reputation has been adversely impacted and it has foreclosed other employment opportunities.

42.    As a direct and proximate result of the Defendants' acts or omissions, Plaintiff has suffered general damages, loss of earnings, emotional damages, and punitive damages in an amount to be proven at trial, but which amount exceeds $10,000.

**COUNT III**
**Violation of Article I Section 9 of the Idaho Constitution**

43.    The allegations set forth in the preceding paragraphs of this Complaint are realleged in this paragraph as if fully set forth in their entirety herein.

44.    Plaintiff spoke out on matters of public concern including misuse/waste of public funds and suspected violation of laws, rules or regulations as outlined above.

45.    These concerns were raised with Defendants.

46.    These concerns were raised orally and in a manner that was minimally, if at all, disruptive to the operations of the Department and City.

47.    Plaintiff's speech was not made pursuant to his official duties but instead as a taxpayer and citizen of Caldwell.

48.    Plaintiff suffered an ongoing pattern of adverse action leading to his discharge as a result of having exercised his right to free speech.

49.    These adverse actions were and are reasonably likely to deter Plaintiff from engaging in protected activity under the Idaho Constitution.

50.    Plaintiff's protected speech was a motivating factor in the adverse employment actions he suffered.

51.    Defendants did not have adequate justification for treating Plaintiff differently from other

members of the general public.

52.    Defendants would not have taken the adverse actions absent the protected speech.

53.    As all times relevant hereto, Defendants acted under color of law when committing the acts complained of.

54.    Defendants' retaliatory conduct violated the clearly established constitutional right of free speech, and the right to petition the government for redress, rights which a reasonable person would have known.

55.    As a result of Defendants' actions, Plaintiff has suffered losses including severe emotional distress.

56.    As a direct and proximate result of the Defendants' acts or omissions, Plaintiff has suffered general damages, loss of earnings, emotional damages, and punitive damages in an amount to be proven at trial, but which amount exceeds $10,000.

## COUNT IV
### Violations of the First Amendment of the United States Constitution

57.    The allegations set forth in the preceding paragraphs of this Complaint are realleged in this paragraph as if fully set forth in their entirety herein.

58.    Plaintiff spoke out on matters of public concern including misuse/waste of public funds and suspected violation of laws, rules or regulations as outlined above.

59.    These concerns were raised with Defendants.

60.    These concerns were raised orally and in a manner that was minimally, if at all, disruptive to the operations of the Department and City.

61.    Plaintiff 's speech was not made pursuant to his official duties.

62.    Plaintiff suffered an ongoing pattern of adverse action leading to his discharge as a result of having exercised his right to free speech.

COMPLAINT and DEMAND FOR JURY TRIAL - 8

63.     These adverse actions were and are reasonably likely to deter Plaintiff from engaging in protected activity under the United States Constitution.

64.     Plaintiff's protected speech was a motivating factor in the adverse employment actions he suffered.

65.     Defendants did not have adequate justification for treating Plaintiff differently from other members of the general public.

66.     Defendants would not have taken the adverse actions absent the protected speech.

67.     As all times relevant hereto, Defendants acted under color of law when committing the acts complained of.

68.     Defendants' retaliatory conduct violated the clearly established constitutional right of free speech under the First Amendment, and the right to petition the government for redress, rights which a reasonable person would have known.

69.     As a result of Defendants' actions, Plaintiff has suffered losses including severe emotional distress.

70.     As a direct and proximate result of the Defendants' acts or omissions, Plaintiff is entitled to relief under 42 U.S.C. § 1983 including compensatory damages, attorney fees and costs against Defendants in their official capacities.

## COUNT V
### Violations of the Article I Section 17 of the Idaho Constitution

71.     The allegations set forth in the preceding paragraphs of this Complaint are realleged in this paragraph as if fully set forth in their entirety herein.

72.     Article I Section 17 to the Idaho Constitution guarantees every citizen the right to be free from unreasonable searches and seizures.

73.     Defendants owed a duty of care toward Plaintiff not to abridge his constitutionally

protected rights.

74. Plaintiff was placed on administrative leave on May 14, 2024 – the day after he emailed the mayor - and, in an unprecedented move, was placed on **house arrest** by Sopoaga.

75. The "Personnel Order" Sopoaga executed stated "you will remain at home and available between the hours of 8:00 a.m. and 5:00 p.m. Monday through Friday. You are to notify the PSB Lieutenant, John Tucker, *and obtain permission prior to leaving the residence for any reason during these hours*." (Emphasis added).

76. It was not until days later, and after Plaintiff's counsel pointed out the unlawfulness of this "Order" that Plaintiff was relieved of his house arrest restrictions.

77. Placing Plaintiff on house arrest and restricting his freedom of movement was illegal, unlawful and a deprivation of Plaintiff's constitutional rights under Article I Section 17 to the Idaho Constitution to be free from unreasonable seizures.

78. These adverse actions were and are reasonably likely to deter Plaintiff from engaging in protected activity under the Idaho Constitution.

79. Defendants did not have adequate justification for treating Plaintiff differently from other members of the general public – and certainly could not have confined any member of the public to their house under similar circumstances.

80. As all times relevant hereto, Defendants acted under color of law when committing the acts complained of.

81. As a result of Defendants' actions, Plaintiff has suffered losses including severe emotional distress.

82. As a direct and proximate result of the Defendants' acts or omissions, Plaintiff is entitled to relief under 42 U.S.C. § 1983 including compensatory damages, attorney fees and costs against Defendants in their official capacities.

## COUNT VI
### Violations of the Fourth Amendment of the United States Constitution

83.    The allegations set forth in the preceding paragraphs of this Complaint are realleged in this paragraph as if fully set forth in their entirety herein.

84.    The Fourth Amendment to the United States Constitution guarantees every citizen the right to be free from unreasonable searches and seizures.

85.    Defendants owed a duty of care toward Plaintiff not to abridge his constitutionally protected rights.

86.    Plaintiff was placed on administrative leave on May 14, 2024 – the day after he emailed the mayor - and, in an unprecedented move, was placed on **house arrest** by Sopoaga.

87.    The "Personnel Order" Sopoaga executed stated "you will remain at home and available between the hours of 8:00 a.m. and 5:00 p.m. Monday through Friday. You are to notify the PSB Lieutenant, John Tucker, *and obtain permission prior to leaving the residence for any reason during these hours*." (Emphasis added).

88.    It was not until days later, and after Plaintiff's counsel pointed out the unlawfulness of this "Order" that Plaintiff was relieved of his house arrest restrictions.

89.    Placing Plaintiff on house arrest and restricting his freedom of movement was illegal, unlawful and a deprivation of Plaintiff's constitutional rights under the Fourth Amendment to be free from unreasonable seizures.

90.    These adverse actions were and are reasonably likely to deter Plaintiff from engaging in protected activity under the United States Constitution.

91.    Defendants did not have adequate justification for treating Plaintiff differently from other members of the general public – and certainly could not have confined any member of the public to their house under similar circumstances.

92.    As all times relevant hereto, Defendants acted under color of law when committing the acts complained of.

93.    As a result of Defendants' actions, Plaintiff has suffered losses including severe emotional distress.

94.    As a direct and proximate result of the Defendants' acts or omissions, Plaintiff is entitled to relief under 42 U.S.C. § 1983 including compensatory damages, attorney fees and costs against Defendants in their official capacities.

## ATTORNEY FEES

Plaintiff is entitled to recover attorney fees and costs incurred in prosecuting each Count of this action pursuant to Idaho Code § 67-5901 *et seq.*; Idaho Code § 6-2106; Idaho Code § 12-120; Idaho Code § 12-121; 42 U.S.C. § 1983; Title VII of the Civil Rights Act; and all other applicable state and federal law.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by a jury composed of no less than twelve (12) persons on all issues so triable, pursuant to F.R.C.P. 38(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.    For an award to Plaintiff for economic and non-economic damages against Defendants in an amount to be proven at trial, but which exceeds $10,000;

2.    For compensatory damages to compensate Plaintiff for his emotional distress, loss of enjoyment of life, and other non-pecuniary losses in amounts to be established at trial;

3.    For Plaintiff's reasonable attorney's fees and costs of court;

4.    For further and other relief the court deems proper.

DATED this 18ᵗʰ day of November, 2024.

DINIUS LAW

                           */s/ Kevin E. Dinius*

By:_____

Kevin E. Dinius

Sarah Hallock-Jayne

Attorneys for Plaintiff