UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NATHAN DOUTHIT,<br><br>    Plaintiff,<br><br>-vs-<br><br>CITY OF CALDWELL; CALDWELL POLICE DEPARTMENT; REX INGRAM; SHAWN SOPOAGA; ROB ROSIN; JOHN TUCKER; and, TAYLOR YETT,<br><br>Defendants. | Case No. **1:24-cv-00558-REP**<br><br>**DISCOVERY PLAN** |

## I. Preservation

    a. **Preservation & Proportionality:** The parties have applied the proportionality standard in Rule 26(b)(1) to determine what information should be preserved and what information should not be preserved.

    b. **Electronically Stored Information (ESI):** With regard to ESI, the parties agree that:

        i. **Date Range:** Only ESI created or received between July 1, 2022 and the present will be preserved;

        ii. **Scope of Preservation:** The parties agree to:

            1. Preserve the Following Types of ESI

                a. Any electronically stored information as defined by Federal Rule of Civil Procedure 34(a)(1)(A), including writings,

>> drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations, as well as email messages, text or personal messages, video and audio recordings, maps, notes, minutes, memoranda, letters, calendars, logs, social media, information gathered from the internet, documents created on word processing programs such as Word Perfect or Word, spreadsheets such as Excel or QuattroPro, scanned or static images such as PDF or TIFF, and presentations such as Power Point materials.
>
> 2. From the Following Custodians or Job Titles:
>     a. For Plaintiff: Nathan Douthit
>     b. For Defendants: City of Caldwell records custodian(s), Caldwell Police Department records custodian(s), Rex Ingram and Shawn Sopoaga
>
> iii. **Preserved But Not Searched:**  These data sources are not reasonably accessible because of undue burden or cost pursuant to Rule 26(b)(2)(B) and ESI from these sources will be preserved but not searched, reviewed, or produced:
>     1. Delivery or read receipts of email;
>     2. Logs or other data from video conferencing (including, *e.g.*, Skype or Zoom) or instant messaging tools involving (i) attorneys for the

       United States (and their staff) and/or (ii) attorneys for Defendants in this case (and their staff);

3. Temporary or cache files, including internet history, web browser cache, and cookie files, wherever located;
4. Internally facing server system logs;
5. Externally facing or hosted file sharing system logs;
6. System data from photocopiers or fax machines;
7. Auto-saved copies of electronic documents;
8. Deleted, slack, fragmented, or other data only accessible by forensics;
9. Random access memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system; and
10. Voicemail messages on the voicemail systems of (i) attorneys for the United States (and their staff) and/or (ii) attorneys for Defendants in this case (and their staff).

iv. **Not Preserved:** Among the sources of data the parties agree are not reasonably accessible pursuant to Rule 26(b)(2)(B), and shall not be preserved, are the following:

1. None known.

v. **ESI Retention Protocols:** The parties and their counsel have each initiated a litigation hold in this case and have so notified the relevant custodians.

      vi. **Cost Sharing:**

          ☐[The parties agree to share the cost of an electronic discovery vendor; shared document repository; or other cost saving measures]

          ☒[The parties agree to bear their own costs for preservation of e-discovery]

## II. Initial Disclosures

    a. The parties agree to serve initial disclosures by April 24, 2025.

    b. The parties agree that the form of the Rule 26(a) initial disclosures shall not be modified.

    c. This matter is not exempt from initial disclosures.

## III. Scope of Discovery

    a. **Scope:** Discovery is necessary on the following subjects/issues:

      • For Plaintiff:

        1. All personnel files and records of every nature and kind relating to Nathan Douthit's tenure of employment with the City of Caldwell; specifically including performance appraisals, promotions, compensation and benefits, positive and adverse personnel actions, job descriptions, duties and responsibilities, personnel policies, guidelines and directives.

        2. A complete record of everything referencing or addressing complaints or concerns involving the City of Caldwell Police

    Department and its administration related to spending, travel and training from July 1, 2022 to present.

3. Any and all cell phones utilized by Chief Rex Ingram, Deputy Chief Shawn Sopoaga, Captain Rob Rosin, Lieutenant John Tucker and Tayler Yett in their official capacities, emails, texts, telephone messages, notes and any other tangible recordings of communications, internal and external to the City of Caldwell and/or the City of Caldwell Police Department in any way regarding complaints or concerns involving the City of Caldwell Police Department and its administration related to spending, travel and training from July 1, 2022 to present.

4. All decisions, plans, or changes affecting the administration and conduct of the City of Caldwell Police Department relating to budgets, spending, travel, the nonprofit Caldwell Police Mounted Unit Foundation, Inc., solicitation of prostitution, and Chief Rex Ingram's actions towards females in the police department from July 1, 2022 to the present.

5. All communications of every nature, internal and external between Chief Rex Ingram, Deputy Chief Shawn Sopoaga, Captain Rob Rosin, Lieutenant John Tucker and Tayler Yett related to Nathan Douthit from July 1, 2022 to present.

6. All records, documents and of every nature pertaining to any purported investigation of any complaints or concerns, of

> whatever nature and kind, regarding Nathan Douthit's employment with the City of Caldwell Police Department.

- For Defense:

    7. All written communications in any form between Plaintiff any other individual (except legal counsel) regarding Plaintiff's claims;

    8. All documentation regarding Plaintiff's alleged damages;

    9. All documents in Plaintiff's possession regarding any discipline that was taken or contemplated to be taken against Plaintiff while employed by the City of Caldwell.

## IV. Discovery Boundaries

a. **Limits:** The parties agree to apply the existing limits in the Federal Rules of Civil Procedure for depositions, interrogatories, and requests for production.

## V. ESI

a. **ESI File Format:** The parties agree to produce documents in the following file format[s]:

  1. Except as provided below for specific types of documents and data, ESI shall be produced in its native form and must not be converted to another format (*e.g.*, PDF). ESI must be collected and produced in a way that preserves existing metadata.

2. Paper documents must be scanned at 300 d.p.i. and produced as searchable PDFs, unitized as one document per PDF except as provided below for specific types of documents and data.

3. PDFs shall be black-and-white, unless a black-and-white format would obscure or degrade information (*e.g.*, color-coded graphs or charts, printed photographs, or redlines), in which case the party will produce a color PDF. Nothing in this provision prevents a party from scanning and producing paper documents as color PDFs, nor does anything in this provision prevent a Party from producing color PDFs if they choose.

4. Documents must be produced in a manner that clearly reflects custodial information and folder/hierarchical structure.

5. If a document has been prepared in several copies, or additional copies have been made that are not identical (or are no longer identical by reason of subsequent notation or other modification of any kind whatever), each non-identical copy is a separate document.

6. Except for native files, the parties will produce responsive documents Bates-stamped with a prefix to indicate the party producing the documents. For native files, which cannot be Bates-stamped, the Parties will produce the native files with the original file name as well as a spreadsheet index that, for each native file, includes the original file name, production path, and an assigned sequential document identification number.

7. Text messages or social media content (including comments, "likes," sharing, and other interactions with the post(s)) shall be produced as images, including information about the participants and the date/time of the communications.

8. Audio files and video files should be produced as native files, unless the native form is a proprietary format, in which case the file(s) should be converted into a non-proprietary format that can be played using Windows Media Player.

b. **ESI Production Format:** The parties agree that documents will be produced *[check any that apply]*:

☒with logical document breaks;

☒as searchable;

☒with load fields enabling review in common litigation databases such as Summation and Concordance;

☒with metadata, and, if so, in the following fields: _____.

c. **ESI Search Methodology**: The parties have agreed to use the following search methodology:

☐Predictive coding (or technology assisted review);

☒ Keyword search;

☐Other: _____.

    d. **Search Methodology – Transparency:** The parties agree that they will share their search methodology for responding to requests for production of ESI.

    e. **Form of E-mail Production Requests:**

        1. E-mail production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms, and proper time frame.

        2. Emails will be produced as native files. The Parties agree to produce all responsive non-privileged emails in each thread or chain and will not restrict productions to the most inclusive emails.

## VI. Deadlines

    a. The deadline for the completion of fact discovery is: October 30, 2025.

    b. The deadline for completion of expert witness discovery is: October 30, 2025.

## VII. Documents Protected From Discovery

    a. **Clawback:** Pursuant to Fed. R. Evid. 502(d), the parties request that the Court to enter an Order that production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or work-product protection in this case or in any other federal or state proceeding.

    b. **Quick Peek:** The parties

    ☒*[agree that a "quick peek" process pursuant to Fed.R.Civ.P. 26(b)(5) is not necessary in this case]*

    ☐*[agree to a "quick peek" process pursuant to Fed.R.Civ.P. 26(b)(5) as set forth herein: _____].*

  c. **Post-Complaint Communications:** Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

## VIII. Protective Order

  a. The parties have agreed to the terms of a Protective Order to protect *personal information* and will submit that to the Court for its approval.

  b. The parties understand that, even if they agree to seal material filed with the Court, they must still file a motion to seal and obtain Court approval that the sealing meets the Ninth Circuit standards for sealing. *See Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

Dated: March 25, 2025

Respectfully submitted,

| DINIUS LAW | CASTLETON LAW |
|---|---|
|     */s/ Sarah Hallock-Jayne*<br>By:_____<br>Kevin E. Dinius<br>Sarah Hallock-Jayne<br>Attorneys for Plaintiff |     */s/ Bruce J. Castleton*<br>By:_____<br>Bruce J. Castleton<br>Attorneys for Defendants |